UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JUAN GUERRERO,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | ) | C.A. No. 07-430L |

MEMORANDUM AND ORDER

Ronald R. Lagueux, Senior United States District Judge.

This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. For the reasons set forth below, Petitioner's Motion is denied.

I. Background

On March 23, 2005, a federal grand jury in the District of Rhode Island returned an indictment charging Juan Guerrero with one count of conspiring to distribute more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 21 U.S.C. § 846. On September 21, 2005, Guerrero appeared before this Court to change his plea to guilty pursuant to a plea agreement. The Court accepted the guilty plea after a colloquy, in which the Court informed Guerrero, among other things, that he was subject to the statutory maximum sentence as articulated in

his guilty plea, in this case 40 years (Change of Plea Hr'g Tr. 7:22-23, 9:25-10:4, Sep. 21, 2005); that he was subject to a mandatory minimum sentence of five years (Hr'g Tr. 10:17-19); that he had bargained "only for a recommendation from the Government" (Hr'g Tr. 9:1-2); and that the Court was not bound by the Government's recommendation (Hr'g Tr. 8:23-24). The Court elicited from Guerrero that he had discussed with his attorney where the Guidelines might come out in his case, and that Guerrero thought the range would be 70-80 months. (Hr'g Tr. 10:6-14.) The Court then explained how the Guidelines range ultimately would be calculated, and informed Guerrero that the Court was not bound by that range but could go below or above it in sentencing him. (Hr'g Tr. 10:25-11:14, 12:6-8.)

Sentencing was scheduled for December 13, 2005. Guerrero's Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on November 8, 2005. Because Guerrero had felony convictions for a prior controlled substance offense and for a prior crime of violence, he was determined to be a career offender pursuant to § 4B1.1 of the United States Sentencing Guidelines ("Guidelines"), which set his offense level at 34. With a three-point reduction for acceptance of responsibility, Guerrero's offense level was established as 31, with a criminal history category of VI. These factors produced a Guidelines range of 188 to 235 months of imprisonment.

At the sentencing hearing, Guerrero's counsel pressed the objections articulated in Defendant's Objection to the Pre-Sentence Report of November 21, 2005. Counsel asserted that he had not been aware Guerrero was subject to career offender status before seeing the PSR and, thus, had not informed Guerrero that this was a possibility before he entered into the plea agreement. In the Objection, Guerrero, through counsel, requested that he be granted a hearing to determine whether there was a "reasonable probability" that he would not have entered a plea of guilty had he known of his potential status as a career offender. (Obj'n to PSR 2.)

The Court gave Guerrero and his counsel the option of continuing the sentencing hearing so that they could discuss the possibility of filing a motion to withdraw the guilty plea. Counsel conferred briefly with Guerrero, who opted to proceed with the sentencing immediately. The Court then sentenced Guerrero to 188 months of imprisonment after noting that Guerrero's "propensity to use weapons in the past" and his longterm involvement in the drug trade made him a danger to society. (Sentencing Hr'g Tr. 12:23-25, Dec. 13, 2005.) The Court further indicated that documentation existed to show that Guerrero was a member of the Latin Kings gang, which also justified a long sentence and militated against a downward departure. (Hr'g Tr. 13:1-3.)

Guerrero's direct appeal was dismissed by the United States Court of Appeals for the First Circuit on January 9, 2007, pursuant to the appeal waiver in the plea agreement. Subsequently certiorari was denied by the United States Supreme Court. He filed the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence on November 27, 2007. In it, he requests a hearing to resolve his claims of ineffective assistance of counsel and judicial bias.

II. Discussion

Section 2255 of Title 28 provides post-conviction relief in limited circumstances. To obtain such relief, a petitioner must show that an error of law is jurisdictional, constitutional, or a fundamental defect which inherently results in a complete miscarriage of justice. Zanuccoli v. United States, 459 F. Supp. 2d 109, 111 (D. Mass. 2006)(citing Brecht v. Abrahamson, 507 U.S. 619, 634 n.8 (1993); United States v. Addonizio, 442 U.S. 178, 185 (1979)). In the instant case, the bases for Guerrero's Motion are ineffective assistance of counsel and judicial bias. The Court will first determine whether a hearing is necessary to resolve those claims.

**A. Hearing**

Guerrero requests an evidentiary hearing to resolve the issues he has presented as grounds for vacating his conviction. A petitioner bears the burden of establishing that he is entitled

to a hearing by a preponderance of the evidence. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989).

In the context of a § 2255 petition, genuine issues of material fact may not be resolved without a hearing; however, a hearing is not required where a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case. Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995). To dismiss a § 2255 motion without a hearing, a court must accept as true the allegations set forth by the petitioner "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Myatt, 875 F.2d at 11.

In requesting a hearing, Petitioner has failed to raise any factual disputes that might require an evidentiary hearing for resolution. The claim of ineffective assistance of counsel due to failure of counsel to warn Guerrero of the possibility of career offender status requires no further fact-finding and can be resolved on the face of the record, transcript and other relevant papers. The claim of judicial bias is based on statements made by the Court at a hearing for which there is a transcript; therefore, there is no factual dispute to justify a hearing. The request for a hearing, consequently, is denied.

**B. Ineffective Assistance of Counsel**

To demonstrate ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that a claim of ineffective assistance of counsel in the context of a guilty plea is subject to the same two-pronged test established in Strickland. In order to satisfy the "prejudice" requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 58-59.

The essence of Guerrero's ineffective assistance of counsel claim is that his attorney's failure to warn him he was likely to be classified as a career offender affected the outcome of the plea process and that he was reasonably likely not to have entered into the guilty plea had he been aware of that possibility.

In the First Circuit, it has been a long-held proposition that an attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the "prejudice" prong of the ineffective assistance test. United States v. LaBonte, 70 F.3d 1396, 1413 (1st Cir. 1995), overruled on other grounds, 520

U.S. 751 (1997). The outcome of LaBonte is instructive, as the petitioner in that case also based his ineffective assistance claim on his attorney's failure to counsel him on his potential career offender status. The petitioner claimed that his attorney "assured him that his sentence would be no more than eighteen months, and that there was simply 'no way' that he would be sentenced as a career offender pursuant to U.S.S.G. § 4B1.1." Id. The First Circuit concluded that "[e]ven a generous reading of this claim leaves no doubt that [the petitioner] failed adequately to allege any cognizable prejudice." Id.

In this case, then, counsel's failure to warn Guerrero of a potential finding of career offender status cannot sustain a finding of "prejudice." Moreover, Guerrero was given an opportunity to try to undo the alleged harm arising from his lawyer's mistake. At sentencing, Guerrero was offered the opportunity to continue the hearing and file a motion to vacate his plea. Guerrero declined after a discussion with his counsel, and decided to proceed with the sentencing. Any prejudice that might have resulted from his counsel's misstep was negated by the opportunity given him to file a motion to vacate his plea.

It is obvious why Guerrero did not take the opportunity to move to vacate his plea. If his plea had been vacated and the plea agreement negated, the Government could have filed an "enhancement" pursuant to 21 U.S.C. § 851, which would have

raised the maximum penalty to life in prison. He chose to receive the benefit of the plea agreement, wherein the Government agreed not to file an "enhancement." Clearly, revoking his plea and going to trial was not an acceptable alternative for him. He was not willing to take the risk of a possible life sentence. In short, he was not prejudiced by his attorney's inadvertence, and this claim fails.

**C. Judicial Bias**

While Guerrero references no particular statute as the basis for his allegations of judicial bias, as a rule, such claims proceed under either 28 U.S.C. § 144 or 28 U.S.C. § 455. Section 144 requires the party seeking recusal to file a timely and sufficient affidavit alleging personal bias or prejudice on the part of the judge before whom the matter is pending. Section 455, on the other hand, is broader and requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

Because Guerrero has not filed the affidavit required for a § 144 recusal, only a § 455 inquiry is necessary. In the First Circuit, the test for determining whether a judge's impartiality might reasonably be questioned under § 455 is

> whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarily in the mind of the litigant filing the motion under 28 U.S.C. § 455, but rather in the mind of the reasonable man.

United States v. Cowden, 545 F.2d 257, 265 (1st Cir. 1976). Courts insist that there be a factual basis for the claim that there appears to be a lack of impartiality. United States v. Voccola, 99 F.3d 37, 42 (1st Cir. 1996). Unless a party can establish a reasonable factual basis to doubt a judge's impartiality "by some kind of probative evidence," then a judge must hear a case as assigned. Id. (quoting Blizard v. Frechette, 601 F.2d 1217, 1221 (1st Cir. 1979).

The Supreme Court has insisted that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

Liteky v. United States, 510 U.S. 540, 555 (1994).

In support of his judicial bias claim, Guerrero argues that this writer exhibited bias and prejudice in statements referring to Guerrero as a member of the Latin Kings gang. These comments evinced a bias, Guerrero asserts, which effectively denied him his constitutional right to a fair proceeding.

At sentencing, this writer stated that part of his reasoning for not departing downward from the Guidelines range was his

belief that Guerrero was a danger to society: "He's shown a propensity to use weapons in the past and been involved in the drug trade for a long time. Although he denies it, the documentation is there that he is a member of the Latin Kings, a very dangerous organization . . . ." (Sentencing Hr'g Tr. 12:23-13:3, Dec. 13, 2005.) The Court sentenced Guerrero to 188 months, the low end of the Guidelines range.

Ultimately, this writer's statement that Guerrero was a member of the Latin Kings gang did not represent bias or prejudice against Guerrero. Its source was the PSR, in which records from the Wyatt Detention Facility were cited to the effect that Guerrero was a member of the Latin Kings. In his Objection to the Pre-Sentence Report, Guerrero expressed no opposition to the reported gang status in the PSR. Because the Court learned of his gang affiliation properly in the course of proceedings, and Guerrero did not object to the characterization, there can be no basis for asserting that the Court was biased or prejudiced against him in any way when imposing sentence.

## IV. Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is denied.

It is so ordered.

Ronald R. Lagueux

Ronald R. Lagueux
Senior United States District Judge
April 9, 2008